# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **KNIFE RIVER CORPORATION - SOUTH,** | § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. _____ |
| **ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,** | § § § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Knife River Corporation - South ("KRC") respectfully files this Original Complaint for Declaratory Judgment, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-2202, seeking a declaration from the Court that Zurich American Insurance Company ("Zurich") owes defense and indemnity to KRC on Zurich's policy issued to AWP, Inc. ("AWP"), either because KRC is an additional insured or because Zurich is required to honor AWP's contractual indemnity obligations to KRC, and that the applicable excess policy issued by Defendant American Guarantee and Liability Insurance Company ("AGLIC"), another Zurich-affiliated entity, also provides coverage to KRC in connection with the claims at issue. KRC shows the Court as follows:

### I.

#### PARTIES, JURISDICTION AND VENUE

1. Plaintiff KRC is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Bryan, Texas.

2. Defendant Zurich is an insurance company organized and existing under the laws of the State of New York with its principal place of business in Illinois. Defendant Zurich is licensed to do business in Texas and may be served with process by and through its registered agent for service of process: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

3. Defendant AGLIC is an insurance company organized and existing under the laws of the State of New York with its principal place of business in Illinois. Defendant AGLIC is licensed to do business in Texas and may be served with process by and through its registered agent for service of process: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 2201 and 2202 insofar as KRC now seeks a declaration of its rights and obligations under the insurance policies at issue. Pursuant to 28 U.S.C. § 1332, complete diversity exists between the parties, and the amount in controversy exceeds §75,000, exclusive of interests and costs.

5. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claim occurred in this District and Division.

## III.

## FACTS

### THE UNDERLYING LAWSUIT AND CLAIMS

6. This lawsuit is an insurance coverage dispute arising out of a lawsuit filed by Emmett Gonzales, Jr. and Leticia Gonzales in the 13th Judicial District Court of Navarro County, Texas, bearing cause number D19-28045-DV and styled *Emmett Gonzales, Jr. and Leticia Gonzales v.*

*Knife River Corporation – South, Tex Op Construction (GP), LLC, Tex Op Construction, LP, and AWP, Inc.* (the "Underlying Lawsuit").

7. In the Underlying Lawsuit, the Gonzales plaintiffs asserted claims against KRC, AWP, and Tex Op Construction, LP ("Tx Op"), arising out of an automobile accident that occurred in Navarro County on March 19, 2019. Plaintiffs claimed that each of the defendants were negligent with respect to road work being performed on Business 45 in Navarro County, and that such negligence led to the accident causing personal injuries to Mr. Gonzales when he lost control of his vehicle and collided into a fence.

8. At the time of the accident, KRC had a contract with the Texas Department of Transportation ("TxDOT") to complete road work on Business 45 near Corsicana, Texas. KRC subcontracted the milling portion of the road construction to Tex Op, a milling contractor, and subcontracted with Zurich's named insured AWP for the provision and placement of required signage on the construction site, including uneven lane signs, loose gravel signs, no center stripe signs, and Project Limit signs. Plaintiffs' allegations against KRC in the Underlying Lawsuit, and later its subcontractors AWP and Tex Op, were that the Defendants failed to properly backfill, slope, or otherwise make safe an excessive height difference at the edge of a roadway travel lane that occurred during the course of the road work, and failed to properly, compliantly and/or sufficiently warn the traveling public of the unreasonable dangers posed by the uneven lane edge and other roadway hazards requiring signage. In fact, it was alleged by plaintiffs and their causation expert that the Project Limit signs required of AWP affirmatively confused plaintiff and the traveling public, which confusion made the hazard of the vertical edge an unreasonably dangerous condition and contributed to causing the incident.

9. Unquestionably, all responsibility with respect to signage in connection with the project rested with AWP. Indeed, pursuant to Section 2 of its August 20, 2018, Subcontract

Agreement with KRC (the "AWP Subcontract Agreement"), AWP expressly agreed that all TxDOT requirements and specifications pertaining to signage, about which plaintiff sued in the Underlying Lawsuit, would apply to AWP "instead of" KRC. The AWP Subcontractor Agreement provides as follows:

> **Section 2. Work to be Performed**
>
> * * *
>
> This Subcontract represents the entire agreement between Contractor [KRC] and Subcontractor [AWP]. The Contract and Contract Documents [relating to KRC's contract with TxDOT] are incorporated into this Subcontract by reference, and **Subcontractor and its subcontractors will be and are bound by the Contract and Contract Documents** insofar as they relate in any way, directly or indirectly, to the work covered by this subcontract. **Subcontractor agrees to be bound to Contractor** in the same manner and to the same extent as Contractor is bound to Owner under the Contract and Contract Documents **to the extent of the work provided for in this Subcontract**, and that **where**, in the Contract or Contract Documents, reference is made to Contractor, and **the work specification therein pertains to Subcontractor's trade**, craft, or type of work, **then such work or specification shall** be interpreted to **apply to Subcontractor instead of Contractor**.

*See* Exhibit A, AWP Subcontract Agreement, at Section 2 (emphasis added).

10. The Gonzales plaintiffs have settled the Underlying Lawsuit with KRC for a substantial sum, $32.5 million, and have dismissed their claims against all parties. KRC contends that its settlement with Plaintiffs was made necessary because of, and arose out of, in whole or in part, the negligence of subcontractors AWP and Tex Op, both of which entered into identical Subcontract Agreements with KRC in which they agreed to defend and indemnify KRC against claims just like those asserted in the Underlying Lawsuit.

11. While Tex Op and its insurers have stepped up and reached an agreement with KRC concerning their defense and indemnification obligations, to date AWP and its insurers Zurich and AGLIC have not. The Underlying Lawsuit includes a remaining third-party claim for contribution and/or indemnity brought by KRC against subcontractor AWP, through which KRC intends to

obtain a specific apportionment of responsibility against AWP, and the purpose of this action is to require Zurich and AGLIC to meet their obligations to KRC as both an additional insured under the policies issued to AWP and/or as the holder of an "insured contract" as defined by the policies for which the insurers have agreed to be responsible.

## THE AUGUST 20, 2018 SUBCONTRACT AGREEMENT BETWEEN KRC AND AWP

12.     The August 20, 2018 AWP Subcontract Agreement between KRC and AWP further provides as follows:

> Section 12. Indemnification.
>
> "…Subcontractor [AWP] shall release, indemnify, and hold harmless Owner and Contractor [KRC] – including Owner's and Contractor's officers, employees, affiliates, agents, and representatives – from and against any and all claims, causes of action, damages, attorney's fees, losses, or expenses ("Claims") for any and all property damage or personal injuries arising from Subcontractor's obligations under this Subcontract, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the work to be performed under this Subcontract), but only to the extent caused by the negligent acts or omissions of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable.
>
> (a)    It is the express intent of the Parties that Subcontractor's indemnity obligations shall include Claims based in negligence, whether caused or alleged to be caused by Subcontractor, in whole or in part.
>
> (b)    Subcontractor further agrees to indemnify and hold harmless Owner and Contractor from and against any liability or damage sustained by Owner or Contractor by reason of any lien (including, but not limited to, mechanic's liens) or claim (including, but not limited to, bond claims) asserted by any person or entity that may have supplied material or labor to Subcontractor in connection with the goods covered herein.
>
> (c)    If after a claim has been litigated to conclusion, either judicially or through arbitration, and it is determined that the injury, death, or damage was caused by the proportionate responsibility of Owner or Contractor, Owner or Contractor will assume responsibility for Owner's or Contractor's proportionate share of the damages for which is it comparatively responsible, excluding however, those damage amounts covered by insurance required pursuant to this Subcontract."

*See* AWP Subcontract Agreement, attached hereto and incorporated by reference herein as Exhibit

**Original Complaint for Declaratory Judgment**                                                                 **Page 5 of 15**

A, at Section 12.

13. In addition to its obligation to defend and indemnify KRC, AWP agreed to obtain insurance coverage for KRC. The AWP Subcontractor Agreement provides that AWP shall procure insurance policies as follows:

> Section 11.1. Insurance/Risk of Loss. Subcontractor [AWP] shall obtain, at its own expense, from reliable insurance carriers satisfactory to Contractor [KRC] and authorized to do business in the state where the work is to be performed, the following applicable insurance policies indicated below, with limits not less than those specified:
>
> * * * *
>
> 2. Commercial General Liability insurance with a combined single limit for bodily injury and property damage of $1,000,000.00 each occurrence and general products liability aggregate of $2,000,000.00 each occurrence, covering all obligations or operations to be performed under this Subcontract. Policy shall include no modifications that reduce the standard coverage provided under a commercial liability form and delete railroad exclusions from contractual section or definition section of insured Contract.
>
> * * * *
>
> 4. Commercial Umbrella Liability/Excess Liability insurance with limits of not less than $5,000,000.00 per occurrence.
>
> * * * *
>
> Section 11.2. General Insurance Provisions.
>
> * * * *
>
> 5. Prior to commencing work under this Subcontract, Subcontractor shall deliver to Contractor certificates in a form satisfactory to Contractor evidencing the existence of insurance as provided for above and, except with regard to Worker's Compensation and Professional Liability Insurance, naming Contractor as an additional insured; and shall also provide primary coverage without right of contribution by any insurance carried by Contractor. Subcontractor will resubmit updated certificates prior to the expiration date of any required insurance.
>
> 6. All of the above-described insurance policies, together with all other insurance policies now owned or purchased hereunder, shall contain provisions that the insurance carriers will have no right of recovery or subrogation against Contractor or any of its subsidiaries or affiliated companies and Subcontractor does hereby waive its right of recovery against Contractor.

*See* Exhibit A, AWP Subcontract Agreement, at Sections 11.1 and 11.2.

14. The claims by the Gonzales plaintiffs in the Underlying Lawsuit arise out of or in connection with the work and services performed by AWP for KRC and the injuries at issue were caused in whole or in part by the negligent acts or omissions of subcontractor AWP, acts and omissions for which AWP also contractually assumed responsibility under the subcontract "instead of" KRC.  Accordingly, AWP is obligated to indemnify KRC for its defense fees and expenses, as well as a portion of the settlement that KRC was required to pay to Plaintiffs.

15. Without limitation, discovery conducted in the Underlying Lawsuit and expert analysis reveals that the temporary traffic control/construction zone warning signage in place and presented to Mr. Gonzales leading up to and at the time and place of the accident at issue, which signage Zurich's named insured AWP was required to properly place, was not in accordance with applicable standards, did not provide positive and clear guidance and/or warning to Mr. Gonzales of the dangers ahead, and made the hazard of the vertical edge an unreasonably dangerous condition, all of which was a contributing cause of the accident.  The injuries at issue were therefore caused in whole or in part by the negligent acts or omissions of subcontractor AWP, acts and omissions for which AWP contractually assumed responsibility under the subcontract "instead of" KRC and agreed to indemnify KRC for any resulting liability.

16. Specifically, Mr. Gonzales passed two advance warning signs placed by AWP for a different AWP construction project to the north, one having nothing to do with KRC, which gave him conflicting information about where the work area and hazards ahead were located.  That is, AWP's signage informed Mr. Gonzales as he was passing through KRC's construction zone about the nature and proximity of hazards associated with its unrelated construction project further north, when in fact he still had about a mile to drive on a milled roadway with loose gravel.  Moreover, AWP dangerously placed the confusing signs in KRC's construction zone without KRC's permission and kept them there despite the fact that AWP was demanded by a "Priority One"

TxDOT Barricade Report to remove them within 72 hours. The TxDOT Barricade Report is dated March 7, 2019, meaning AWP was required to remove its dangerous and confusing signs by March 10, 2019. Yet, they were still present and confusing the traveling public in KRC's construction zone when Mr. Gonzales crashed on March 19, 2019, nine days later.

17. KRC has demanded that AWP and/or its insurers Zurich and AGLIC indemnify KRC and provide KRC's defense with respect to attorney's fees and costs incurred in connection with the Underlying Lawsuit, but AWP, Zurich and AGLIC have failed and refused to do so.

### THE ZURICH POLICY

18. Zurich issued its $2M per occurrence Commercial General Liability Policy number GLO 0196742-02 to AWP for the period June 15, 2018, to June 15, 2019 (the "Zurich Policy"). A true and correct copy of the Zurich Policy is attached hereto and incorporated by reference herein as Exhibit B.

19. The Zurich Policy provides in relevant part as follows:

**SECTION I. -- COVERAGES**

**COVERAGE A -- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

    **b.** This insurance applies to "bodily injury" or "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" …; and

        **(2)** The "bodily injury" or "property damage" occurs during the policy period….

\* \* \* \*

**2.  Exclusions**

This insurance does not apply to:

\* \* \* \*

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**   That the insured would have in the absence of the contract or agreement ; or

**(2)**   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**   Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \* \*

## SECTION V. – DEFINITIONS

\* \* \* \*

**9.**   "Insured contract" means:

\* \* \* \*

**f.**   That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement….

\* \* \* \*

**Additional Insured — Automatic — Owners, Lessees Or Contractors Endorsement**

**A.**   Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   **1.**   Your acts or omissions; or

   **2.**   The acts or omissions of those acting on your behalf, in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

However, the insurance afforded to such additional insured:

   **1.**   Only applies to the extent permitted by law; and

   **2.**   Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured….

\* \* \* \*

**D.**   For the purposes of the coverage provided by this endorsement:

   **1.**   The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions:**

   **Primary and Noncontributory insurance**

   This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

   **a.**   The additional insured is a Named Insured under such other insurance; and

   **b.**   You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured….

*See* Exhibit B, Zurich Policy.

20. KRC is an additional insured on the Zurich Policy pursuant to the **Additional Insured — Automatic — Owners, Lessees Or Contractors** endorsement set forth above, and is also the holder of an "insured contract" covered by the Zurich Policy by virtue of the AWP Subcontract Agreement.

21. KRC tendered the claim to AWP for defense and indemnity under the AWP Subcontract Agreement, which AWP in turn submitted to Zurich as its liability carrier. Zurich has denied that any obligation is owed to KRC either as an additional insured or a contractual indemnitee. Zurich owed KRC a duty to defend it in the Underlying Lawsuit and resolve the claims asserted in that suit. Zurich has breached its duty to defend and indemnify KRC.

## THE AGLIC EXCESS POLICY

22. In addition to the Zurich Policy, Zurich affiliate AGLIC issued its $25M per occurrence Commercial Umbrella Liability Policy number AUC 0196716-02 to AWP, with a policy period of June 15, 2018, to June 15, 2019 (the "AGLIC Excess Policy"). A true and correct copy of the AGLIC Excess Policy is attached hereto and incorporated by reference herein as Exhibit C.

23. The AGLIC Excess Policy provides "following form" coverage excess to that of the Zurich Policy, which is "underlying insurance" for purposes of the AGLIC Excess Policy. The AGLIC Excess Policy provides in relevant part as follows:

**SECTION I.   COVERAGE**

**A.   Coverage A – Excess Follow Form Liability Insurance**

Under **Coverage A**, we will pay on behalf of the **insured** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, this policy includes:

**1.** The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** below; and

>    2.    The terms and conditions that apply to **Coverage A** of this policy.
>
> Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then **Coverage A** does not apply to such damages….
>
>    * * * *

**SECTION VI.   CONDITIONS**

> A.    The following Conditions are applicable to **Coverage A**, **Coverage B** and **Coverage C**.
>
>    * * * *
>    **13.    Other Insurance**
>
>    If **other insurance** applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply:
>
>       a.    If the **other insurance** is written to be excess of this policy; or
>
>       b.    With respect to **Coverage A** only, if the **named insured** has agreed in a written contract to carry insurance to apply prior to and be non-contributory with that of another person or organization's insurance, but only as respects damages arising out of insured operations or work on behalf of the named insured performed under such written contract. The limits available to the other person or organization will be the lesser of the policy limits or the minimum limits required by such written contract. In that case, other insurance of that person or organization will apply as excess and not contribute prior to the insurance afforded by this policy.
>
> Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance.

24.    KRC is an additional insured on the AGLIC Excess Policy pursuant to the Zurich Policy's **Additional Insured — Automatic — Owners, Lessees Or Contractors** endorsement, and is also the holder of an "insured contract" covered by the AGLIC Excess Policy by virtue of the AWP Subcontract Agreement and the Zurich Policy provisions.

25.    KRC tendered the claim to AWP for defense and indemnity under the AWP Subcontract Agreement, which AWP in turn submitted to Zurich as its primary liability carrier and AGLIC as its excess liability carrier. Zurich and AGLIC have denied that any obligation is owed to

KRC either as an additional insured or a contractual indemnitee.

## IV.

## REQUEST FOR DECLARATORY RELIEF

26.     Plaintiff KRC incorporates by reference the allegations and averments contained in Paragraphs 1 through 25 above, as though set forth fully herein.

27.     KRC invokes this Court's power to render a declaratory judgment. As set forth above, there is an actual controversy concerning the insurance coverage available and owed to KRC under the Zurich Policy and the AGLIC Excess Policy in connection with the Underlying Lawsuit brought by Emmett Gonzales, Jr. and Leticia Gonzales.

28.     The terms of the Zurich Policy and the AGLIC Excess Policy are clear and unequivocal. Zurich had both a duty to defend and a duty to indemnify KRC in the Underlying Lawsuit, but it has failed and refused to do either, and AGLIC is required to indemnify KRC with respect to amounts in excess of the Zurich Policy. Therefore, Plaintiff KRC asks that it be granted the following relief from this Court:

    A.    a declaration by the Court that the Zurich Policy provides coverage to KRC as an additional insured, and that Zurich owes a duty to defend and indemnify KRC in the Underlying Lawsuit;

    B.    a declaration by the Court that the AGLIC Excess Policy provides coverage to KRC as an additional insured, and that AGLIC owes a duty to indemnify KRC for amounts expended in excess of the Zurich Policy limits in connection with the Underlying Lawsuit;

    C.    a declaration that the additional insurance coverage to KRC under the Zurich Policy and the AGLIC Excess Policy is primary to and noncontributory with any coverage owed to KRC under any policy of insurance issued to KRC as a named insured;

    D.    a declaration that Zurich must reimburse KRC as an additional insured for defense costs incurred on behalf of KRC in the Underlying Lawsuit;

  E. a declaration that Zurich must reimburse KRC as an additional insured for the amount of costs of its settlement with Plaintiffs in the Underlying Lawsuit attributable to the negligence of named insured AWP;

  F. a declaration that AGLIC must reimburse KRC as an additional insured for the amount of costs of its settlement with Plaintiffs in the Underlying Lawsuit attributable to the negligence of AWP in excess of the Zurich Policy limits;

  G. a declaration that, regardless of whether KRC is an additional insured under the Zurich Policy and the AGLIC Excess Policy, the AWP Subcontract Agreement is an "insured contract" as defined by the Zurich Policy and the AGLIC Excess Policy because AWP assumed the tort liability of KRC within the indemnity provision of that agreement, and therefore KRC is entitled to flow-through coverage under the Zurich Policy for defense costs and under the Zurich Policy and AGLIC Excess Policy for any part of the settlement attributable to AWP's negligence as AWP's contractual indemnitee because the Zurich Policy and the AGLIC Excess Policy provide coverage for AWP's contractual obligations; and

  H. such other and further relief as the Court deems just and equitable under the circumstances.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff KRC prays for judgment declaring the rights and obligations of the parties as set forth above, and for such other and further relief, both at law and in equity, as it may show itself justly entitled.

Respectfully submitted,

**FEE, SMITH, SHARP & VITULLO, L.L.P.**


*/s/ Thomas W. Fee*
**Thomas W. Fee**
State Bar No. 06873160
**James J. McGoldrick**
State Bar No. 00797044
**Meredith C. Allen**
State Bar No. 24007009
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
972-934-9100
972-934-9200 [Fax]
tfee@feesmith.com
jmcgoldrick@feesmith.com
mallen@feesmith.com

**ATTORNEYS FOR PLAINTIFF
KNIFE RIVER CORPORATION – SOUTH**