IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KNIFE RIVER CORPORATION – SOUTH, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:21-cv-1344-B |
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | § § § § § | |
| Defendants. | § § | |

**DEFENDANTS ZURICH AMERICAN INSURANCE COMPANY AND AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S MOTION TO DISMISS UNDER FEDERAL RULE OF PROCEDURE 12(b)(6)**

Blair Dancy
State Bar No. 24001235
bdancy@cstrial.com
Michael D. Moody
State Bar No. 24041510
mmoody@cstrial.com
Sarah E. Scott
State Bar No. 24073580
sscott@cstrial.com
**CAIN & SKARNULIS PLLC**
400 W. 15th Street, Suite 900
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEYS FOR DEFENDANTS
ZURICH AMERICAN INSURANCE
COMPANY AND AMERICAN GUARANTEE
AND LIABILITY INSURANCE COMPANY**

# TABLE OF CONTENTS

**Page**

Table of Contents ...................................................................................................................i

Index of Authorities............................................................................................................ii

I.      Introduction ............................................................................................................1

II.     Background.............................................................................................................2

        A.      The Underlying Suit. ...................................................................................2

        B.      The Subcontract Agreement between KRC and AWP ............................3

        C.      AWP's Insurance Policy with Zurich .......................................................5

        D.      AGLIC Excess Policy..................................................................................5

III.    Argument and Authorities ...................................................................................6

        A.      Legal Standard ............................................................................................6

        B.      Duty to Defend and Duty to Indemnify....................................................6

                1.   Ohio law governs the policies ............................................................7

                2.   The eight-corners rule, and beyond .................................................8

        C.      The Texas Anti-Indemnity Statute. ........................................................10

        D.      There is no duty to defend; the underlying petitions did not allege
                KRC was liable for AWP's negligence ...................................................11

        E.      There is no duty to indemnify .................................................................16

                1.   There is no duty to indemnify based on the lack of allegations
                     of vicarious liability for AWP's acts .............................................16

                2.   KRC did not settle any claims for vicarious liability for AWP's acts.............17

        F.      KRC's claims for indemnity coverage for its claims against AWP
                are not ripe and should be dismissed .....................................................19

IV.     Exhibits.................................................................................................................21

V.      Conclusion ............................................................................................................22

# INDEX OF AUTHORITIES

**CASES**                                                                                                          **Page**

*Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682 (5th Cir. 2019) ............................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 6

*Ass'n Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 1:19-CV-1248-LY,
    2020 WL 3403073 (W.D. Tex. June 18, 2020) ........................................................... 16, 17

*Auzenne, Auzenne v. Great Lakes Reinsurance, PLC*, 497 S.W.3d 35
    (Tex. App.—Houston [14th Dist.] 2016, no pet.) ............................................................. 20

*Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945 (Tex. 1998) ........................................... 12

*Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19 (Tex. 1987) ...................................................... 16

*Bell v. VPSI, Inc.,* 205 S.W.3d 706 (Tex. App.–Fort Worth 2006, no pet.) ........................... 13, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 6

*Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 846 Fed. Appx. 248
    (5th Cir. 2021), *certified question accepted* (Mar. 19, 2021) ........................................... 12

*Colony Ins. Co. v. Peachtree Constr., Ltd*, 647 F.3d 248 (5th Cir. 2011) .................................... 16

*Dorsey v. State Farm Mut. Auto. Ins. Co.*, 457 N.E.2d 1169 (Ohio 1984) .................................. 20

*Durham v. Hallmark Cty. Mut. Ins. Co.*, No. 11-16-00183-CV,
    2018 WL 3469257 (Tex. App.—Eastland July 19, 2018, pet. denied) ............................ 19

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289 (5th Cir. 2020) .......................... 7

*Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368 (5th Cir. 2008) ......................... 6

*Farlow v. Harris Methodist Fort Worth Hosp.,* 284 S.W.3d 903
    (Tex. App.–Fort Worth 2009, pet. denied) ....................................................................... 13

*Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216
    (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ...................................................... 19

*Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) .......................... 8, 10

*Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.*, 135 N.E.3d 499
(Ohio Ct. App. 2019), *appeal not allowed*, 134 N.E.3d 202 ..............................8, 9, 11, 12

*Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589 (5th Cir. 2011) ......................................8, 11

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009)...........................................................................2, 5

*Gonzalez v. Ramirez*, 463 S.W.3d 499 (Tex. 2015) .................................................................13, 14

*Granger v. Auto-Owners Ins.*, 40 N.E.3d 1110 (Ohio 2015) ...........................................................9

*Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354 (5th Cir. 1973) ................................................7

*In re All Cases Again Sager Corp.* 967 N.E.2d 1203 (Ohio 2012) ...............................................20

*In re Essex Ins. Co.,* 450 S.W.3d 524 (Tex. 2014) ........................................................................19

*In re S. Scrap Material Co., LLC*, 541 F.3d 584 (5th Cir. 2008) ...................................................6

*Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173 (5th Cir. 2012) ..............................21

*Karam v. Allstate Ins. Co.*, 436 N.E.2d 1014 (Ohio 1982),
*overruled on other grounds by Dorsey v. State Farm Mut. Auto. Ins. Co.*,
457 N.E.2d 1169 (Ohio 1984) ......................................................................................................20

*Koch Ref. Co. v. Chapa*, 11 S.W.3d 153 (Tex.1999) ...................................................................13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ...........................................................................................3, 18, 21

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 392 F. Supp. 3d 731
(S.D. Tex. 2019), *question to the Texas Supreme Court certified on
other grounds*, No. 19-20489, 2021 WL 3758083 (5th Cir. Aug. 25, 2021) ..............10, 11

*Maxum Indem. Co. v. Robbins Co.*, 784 Fed. Appx. 366 (6th Cir. 2019) ................................9, 16

*Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50 (Tex. 1991) ..............................................7

*Newspapers, Inc. v. Love,* 380 S.W.2d 582 (Tex. 1964) ..............................................................12

*Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523 (5th Cir. 2004) ..................9, 12, 16

*Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448 (6th Cir. 2003)...............................9

*Orthopedic & Neurological Consultants, Inc. v. Cincinnati Ins. Co.*,
104 N.E.3d 133 (Ohio Ct. App. 2018) ...........................................................................................8

*Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19 (Ohio 1994)...........................................................8

*Scottsdale Ins. Co. v. National Emergency Servs., Inc.*,
   175 S.W.3d 284 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ..............................7

*Spih Tyler, LLC v. Liberty Mut. Ins. Co.*, No. 3:17-CV-1292-L,
   2018 WL 4003314 (N.D. Tex. Aug. 17, 2018) (J. Lindsay) ......................................20, 21

*Union Pac. R.R. Co. v. Brown*, No. 04-17-00788-CV,
   2018 WL 6624507 (Tex. App.—San Antonio Dec. 19, 2018, no pet.)................11, 12, 17

*Utica Nat'l Ins. Co. of Tex. v. American Indem. Co.*, 141 S.W.3d 198 (Tex. 2004) .....................8

*XL Specialty Ins. Co. v. Kiewit Offshore Services, Ltd.*, 513 F.3d 146 (5th Cir. 2008) .................9

*Zarzana v. Ashley*, 218 S.W.3d 152
   (Tex. App.—Houston [14th Dist.] 2007, pet. struck)........................................................15

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487 (Tex. 2008) ...................................................9


## RULES AND STATUTES

FED. R. CIV. P 12(b)(6) ...................................................................................................3, 5, 6, 21

TEX. INS. CODE § 21.42..............................................................................................................7

TEX. INS. CODE § 151.001 .......................................................................................................10

TEX. INS. CODE §§ 151.101-151.151 .....................................................................................10

TEX. INS. CODE § 151.101 .................................................................................................10, 11

TEX. INS. CODE § 151.102 .................................................................................................11, 15

TEX. INS. CODE § 151.104 .................................................................................................11, 15


RESTATEMENT (SECOND) OF AGENCY § 220 (1958).................................................................12, 13

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971) .................................................7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KNIFE RIVER CORPORATION – SOUTH, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:21-cv-1344-B |
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants Zurich American Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("AGLIC") file this Motion to Dismiss Plaintiff's First Amended Complaint [Dkt. 14] for failure to state a claim upon which relief can be granted. Knife River Corporation – South ("KRC") seeks reimbursement from its subcontractor's insurers for a settlement of KRC's own negligence—not the negligence of the subcontractor. KRC's additional-insured claim is prohibited under Texas's anti-indemnity statute.

## I.     INTRODUCTION

This dispute arises out of KRC's $32.5 million settlement of an underlying lawsuit for bodily injuries arising out of a single-vehicle accident. KRC seeks reimbursement from either its subcontractor, AWP, Inc. ("AWP"), or AWP's insurers, the defendants to this suit, based on construction contracts related to highway construction. KRC seeks reimbursement of defense costs

and settlement funds paid for its own negligence, in direct contravention of Chapter 151 of the Texas Insurance Code ("the Anti-Indemnity Statute").[1]

The Anti-Indemnity Statute voids any such claim—for contractual indemnity or additional insured coverage—except to the extent AWP's fault caused the accident *and KRC were potentially liable for such fault*. As reflected by KRC's Complaint and the referenced documents, KRC was never alleged to be vicariously liable for AWP's actions. Further, the contract between KRC and AWP established an independent contractor relationship, precluding any potential for vicarious liability as a matter of law. Defendants owed no duty to defend or duty to indemnify KRC in respect to the underlying suit.

KRC also claims that these liability policies provide coverage for KRC's pending suit against its subcontractor, AWP, Inc., despite there being no judgment or settlement. Texas law prohibits such suit as premature. Dismissal is warranted on all claims.

## II.   BACKGROUND[2]
### A.   *The Underlying Suit*

On March 19, 2019, Emmett Gonzales, Jr. and Leticia Gonzales were involved in a single-car accident while traveling northbound on Business 45 in Navarro County, Texas. This coverage dispute arises out of the underlying suit filed by the Gonzaleses in the 13th Judicial District Court of Navarro County, Texas, styled D19-28045-CV; *Emmett Gonzales, Jr. and Leticia Gonzales v. Knife River Corporation – South, Tex Op Construction (GP), LLC, Tex Op Construction, LP, and AWP, Inc*. (the "Underlying Suit").

---

[1] KRC also claims that, if successful on its suit against AWP for contractual indemnity, that there is coverage under the Defendants' policies for AWP's liability to KRC. As discussed below, this claim is premature, and KRC lacks standing to bring such a claim until / unless it obtains a final judgment from AWP.

[2] This background reflects allegations in KRC's complaint and referenced documents. Defendants do not admit the truth or accuracy of these allegations but reference them solely for purposes of this motion. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) ("This court reviews a district court's dismissal under Rule 12(b)(6) *de novo,* accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs.").

KRC entered into a contract with the State of Texas to complete road work on Business 45 near Corsicana, Texas. KRC subcontracted with AWP to provide and place required signage. KRC subcontracted with Tex Op Construction, LP ("Tx Op") for milling operations in which the existing road surface is removed. Emmett Gonzales, Jr. lost control of his car in the construction area and collided with a fence. Mr. Gonzales and his spouse (the "Underlying Plaintiffs") filed suit against the general contractor—KRC—and later AWP and Tex Op.

On the day prior to the accident, Tex Op completed the removal (or milling) of one of the two northbound lanes. Underlying Plaintiffs alleged the milling operation left a vertical edge between the milled and un-milled surfaces, that was excessively high. Underlying Plaintiffs further alleged that this vertical edge along with improper warning signage proximately caused Mr. Gonzales to lose control of his vehicle and crash. *See* First Amended Complaint [Doc. 14] ¶¶ 6–8; *see also* Exs. D through F hereto, Underlying Petitions.[3]

KRC reached a $32.5 million settlement with the Underlying Plaintiffs and were dismissed from the Underlying Suit. *See* Doc. 14 at ¶ 10. The Underlying Plaintiffs also nonsuited their claims against AWP in the Underlying Suit, though such nonsuit was not required by the settlement agreement with KRC. The Underlying Suit now concerns only KRC's third-party claim for contribution and/or indemnity against AWP. *See id.* at ¶ 11.

## B.    *The Subcontract Agreement between KRC and AWP*

On or around August 20, 2018, KRC and AWP entered into a subcontract agreement (the "AWP Subcontract"). *See* Ex. A to Original Complaint [Doc.1-1].  KRC alleges that the AWP

---

[3] In the context of Rule 12(b)(6), "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). KRC referenced the underlying suit, tender, and the alleged duty of Zurich to defend KRC. *See* Amended Complaint [Doc. 14] ¶¶ 21, 28, 31. Of note, AWP was not added as a defendant to the Underlying Suit until the Second Amended Petition. *See* Exs. D through F.

Subcontract entitles it to contractual indemnity and contribution from AWP. Further, KRC alleges

it is an additional insured pursuant to the AWP Subcontract and the Zurich/AGLIC policies issued

to AWP. *See* First Amended Complaint [Doc. 14] ¶ 28.

The AWP Subcontract requires AWP to defend and indemnify KRC from certain claims,

but only to the extent caused by AWP:

> Section 12. Indemnification.
>
> …Subcontractor [AWP] shall release, indemnify, and hold harmless Owner and Contractor [KRC] – including Owner's and Contractor's officers, employees, affiliates, agents, and representatives – from and against any and all claims, causes of action, damages, attorney's fees, losses, or expenses ("Claims") for any and all property damage or personal injuries arising from Subcontractor's obligations under this Subcontract, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the work to be performed under this Subcontract), **but only to the extent caused by the negligent acts or omissions of Subcontractor** or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable.

*See* AWP Subcontract [Doc. 1-1] § 12 (emphasis added).

The AWP Subcontract also contains the following provision requiring additional insured

insurance be obtained for KRC:

> Section 11.2. General Insurance Provisions.
>
> * * * *
>
> 5. Prior to commencing work under this Subcontract, Subcontractor shall deliver to Contractor certificates in a form satisfactory to Contractor evidencing the existence of insurance as provided for above and, except with regard to Worker's Compensation and Professional Liability Insurance, **naming Contractor as an additional insured**; and shall also provide primary coverage without right of contribution by any insurance carried by Contractor. Subcontractor will resubmit updated certificates prior to the expiration date of any required insurance.

*See id.* § 11.2.

KRC alleges that the above provisions from the AWP Subcontract entitle it to coverage as an additional insured with respect to the polices issued by Zurich and AGLIC, and to coverage for its claims of contractual indemnity against AWP. [Doc. 14] ¶ 28.

The AWP Subcontract also includes an "independent contractor" provision and provides that KRC—not AWP—shall "set and relocate paving signs as needed." *See* AWP Subcontract [Doc. 1-1] § 13 and Attachment A. As discussed further below, these provisions make vicarious liability on KRC's part an impossibility.

## C.   *AWP's Insurance Policy with Zurich*

Plaintiff alleges Zurich issued its $2,000,000 per occurrence Commercial General Liability Policy number GLO 0196742-02 to AWP for the period June 15, 2018, to June 15, 2019 (the "Zurich Policy"). *See* [Doc. 14] ¶ 18; Ex. B thereto [Doc. 1-2];[4] Ex. L. KRC alleges it is an additional insured on the Zurich Policy pursuant to the Additional Insured — Automatic — Owners, Lessees Or Contractors endorsement, and is also the holder of an "insured contract" under which its claims for contractual indemnity against AWP are covered. *See* [Doc. 14] ¶¶ 20-21, 28.

## D.   *AGLIC Excess Policy*

Plaintiff alleges AGLIC issued its $25,000,000 per occurrence Commercial Umbrella Liability Policy number AUC 0196716-02 to AWP, with a policy period of June 15, 2018, to June 15, 2019 (the "AGLIC Policy"). *See* [Doc. 14] ¶ 22; Ex. C thereto [Doc.1-3]. KRC alleges it is an additional insured under the AGLIC Policy since the AGLIC Policy "follows form" as to the Zurich Policy, under which KRC qualifies as an additional insured. [Doc. 14] ¶¶ 23–24.

---

[4] Defendants do not concede the accuracy or completeness of the policies attached to Plaintiff's Complaint but reference them purely for purposes of this motion, assuming such alleged policies to be "true." *See Gonzalez v. Kay*, 577 F.3d at 603 ("This court reviews a district court's dismissal under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."). In respect to the

Under Chapter 151 of the Texas Insurance Code, KRC is not entitled to any coverage under either the Zurich Policy or the AGLIC Policy, whether as an additional insured or in respect to its claims for contractual indemnity against AWP.[5]

### III.   ARGUMENT AND AUTHORITIES

#### A.   *Legal Standard*

Rule 12(b)(6) authorizes a district court to dismiss causes of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371-72 (5th Cir. 2008). But the Court need not accept as true legal conclusions or unwarranted factual inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), KRC's complaint must include sufficient facts to state a claim for relief that is "plausible on its face." "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555. Rather, to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must allege facts "enough to raise a right to relief above the speculative level." *Id.*

#### B.   *Duty to Defend and Duty to Indemnify*

KRC seeks a declaration from this Court that Defendants owe it duties to defend and indemnify in the Underlying Suit.

---

[5] For purposes of this motion only, Defendants do not raise defenses related to whether KRC would qualify as an additional insured under the policies' terms or whether the policies' terms would provide coverage otherwise. The issue raised in this motion is limited to Chapter 151 of the Texas Insurance Code, with Defendants fully reserving their rights to raise any other coverage defenses as may be warranted at a later date.

### 1.    Ohio law governs the policies.

"When a contract contains no choice-of-law provision and no statute indicates which law to apply, Texas courts apply the 'law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties.'" *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 299 (5th Cir. 2020) (quoting *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) 1971).[6] Multiple factors are relevant to the inquiry, including the needs of the interstate and international systems; the relevant policies of the forum; relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; the certainty, predictability, and uniformity of result; the ease in the determination and application of the law to be applied; the place of contracting; the place of contract-negotiation; the place of performance; the location and subject matter of the contract; and the parties' domicile, residence, nationality, place of incorporation, and place of business. *Id.* at 299.

However, "the place of contracting, not the place of the underlying incident, is the dominant consideration for choice of law in an insurance-coverage dispute." *Id.* at 299–300.

The undisputed facts within the scope of permissible evidence overwhelmingly support the application of Ohio law to these policies. Both policies were brokered and delivered to AWP in

---

[6] Article 21.42 of the Texas Insurance Code compels the application of Texas law to the construction of policies, under certain circumstances, when the insured is a citizen or inhabitant of Texas. For Article 21.42 to apply: (1) the insurance proceeds must be payable to a citizen or inhabitant of Texas; (2) the policy must be issued by a company doing business in Texas; and (3) the policy must be issued in the course of the company's Texas business. *Scottsdale Ins. Co. v. National Emergency Servs., Inc.*, 175 S.W.3d 284, 292 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Here, the policies are clearly made in the course of Defendants' Ohio business, not Texas, and thus, this article does not apply. *See Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1359 (5th Cir. 1973) ("The Texas Court read article 21.42 as designed only to assure that Texas law will apply to contracts made between Texas citizens and insurance companies doing business in Texas, *when and only when* those contracts are made in the course of the company's Texas business." (emphasis in original)); *see also* Exs. L at 8 and C [Doc. 1-3] at 6/54 (reflecting the policies were brokered and issued in Ohio).

Ohio. *See* Ex. L at 8;[7] [Doc. 1-3] at 6/54, Declarations pages. The agreement between KRC and

AWP also reflects AWP is located in Ohio and notices should be provided to AWP in Ohio. *See*

AWP Subcontract [Doc. 1-1] 1 and 20/30. The Second Amended Petition from the Underlying

Suit alleges AWP is an Ohio corporation. *See* Ex. F at ¶ 7. Ohio law applies.

### 2.    The eight-corners rule, and beyond.

Ohio and Texas law are similar in that at least the initial analysis of a duty to defend

depends on an eight-corners analysis. *See Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.*,

135 N.E.3d 499, 504 (Ohio Ct. App. 2019), *appeal not allowed*, 134 N.E.3d 202 (citing *Sanderson

v. Ohio Edison Co.*, 635 N.E.2d 19 (Ohio 1994)) ("If the allegations on the face of the complaint

state a claim arguably or potentially within the policy's coverage, then the insurer must accept the

defense."); *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011) (Texas courts

may not "read facts into the pleadings, look outside the pleadings, or speculate as to factual

scenarios that might trigger coverage or create an ambiguity.").

"The actual substance of the complaint, not how it is categorized, determines the nature of

the claims against the insured. … If an insurer must defend one claim within a complaint, it must

defend the insured on all other claims within the complaint 'even if they bear no relation to the

policy coverage.' " *Orthopedic & Neurological Consultants, Inc. v. Cincinnati Ins. Co.*,

104 N.E.3d 133, 136 (Ohio Ct. App. 2018) (internal citations omitted); *accord Farmers Texas

County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) ("A court must focus on the factual

allegations rather than the legal theories asserted in reviewing the underlying petition."); *Utica

Nat'l Ins. Co. of Tex. v. American Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004) ("A liability

---

[7] Plaintiff purported to include copies of both policies to its Original Complaint. The copy of the primary policy is incomplete. *Compare* Ex. B [Doc. 1-2] (incomplete policy) *with* Ex. L (certified policy from Zurich, with redactions for sensitive financial information unrelated to the claims in this suit). As Plaintiff's copy of this policy does not include the Common Policy Declarations, a complete copy of the policy is attached hereto as Ex. L.

insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.").

But Ohio diverges from Texas law insofar as extrinsic evidence is concerned. If facts developed in the suit inform coverage contrary to the allegations, such facts may excuse an insurer's defense obligation. *See Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.*, 135 N.E.3d at 504 ("[I]t is proper to look at extrinsic evidence after a duty to defend has attached to determine whether that duty may be terminated when indisputable, reliable evidence establishes that insurance coverage has not been contractually triggered under [the] policy's effective time period.") (quoting trial court with approval).

As for the duty to indemnify, under Ohio law, when there is no duty to defend, there is no duty to indemnify. "The duty to defend is broader than the duty to indemnify; therefore, in the absence of a duty to defend, there is no duty to indemnify." *Maxum Indem. Co. v. Robbins Co.*, 784 Fed. Appx. 366, 371–72 (6th Cir. 2019) (citing *Granger v. Auto-Owners Ins.*, 40 N.E.3d 1110, 1115 (Ohio 2015); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). Even if this Court were to apply Texas law, the result would be the same. In Texas, the duty to indemnify is determined based on the facts actually established in the underlying suit. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). In the event of a settlement, the putative indemnitee "may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances." *XL Specialty Ins. Co. v. Kiewit Offshore Services, Ltd.*, 513 F.3d 146, 152 (5th Cir. 2008). Nevertheless, a determination on indemnity may be made along with the duty to defend, if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Northfield Ins. Co. v. Loving Home Care, Inc.*,

363 F.3d 523, 536 (5th Cir. 2004) (quoting *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)) (italics in original).

Here, the same reasons that there is no duty to defend are also the reasons there is no duty to indemnify. KRC's claims are limited by the Texas Anti-Indemnity Statute, which limits KRC's claims to those amounts KRC paid to settle its vicarious liability for AWP's wrongdoing. *See* TEX. INS. CODE §§ 151.101–151.151. This statutory limitation defeats KRC's claims for coverage in respect to both the duty to defend and the duty to indemnify.

### C.     The Texas Anti-Indemnity Statute

"The Texas Anti-Indemnity Statute applies to 'a construction contract for a construction project' in which an indemnitor gives or procures insurance." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 392 F. Supp. 3d 731, 739 (S.D. Tex. 2019), *question to the Texas Supreme Court certified on other grounds*, No. 19-20489, 2021 WL 3758083 (5th Cir. Aug. 25, 2021); TEX. INS. CODE §§ 151.001–151.151. Here, the underlying contract for the construction of a Texas highway qualifies as a "construction contract" subject to the Statute. *See* TEX. INS. CODE § 151.001 (defining "construction contract" and "construction project"), 151.101 (applying chapter "to a construction contract for a construction project for which an indemnitor is provided or procures insurance"); AWP Subcontract [Doc. 1-1]; Amended Complaint [Doc. 14] ¶ 8 ("KRC … "subcontracted with Zurich's named insured AWP for the provision and placement of required signage on the construction site, including uneven lane signs, loose gravel signs, no center stripe signs, and Project Limit signs.").

Under the Statute, an indemnifying party may indemnify another party only for the acts of the indemnifying party (and its subcontractors and employees):

> **[A] provision in a construction contract**, or in an agreement collateral to or affecting a construction contract, **is void and unenforceable as against public policy to the extent that it requires an indemnitor to indemnify, hold harmless,**

> **or defend a party**, including a third party, **against a claim caused by the negligence or fault**, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract **of the indemnitee, its agent or employee, or any third party under the control or supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier.**

*Id.* § 151.102 (emphasis added). Thus, the Statute prohibits indemnity except to the extent KRC is liable for AWP's wrongful acts.

> This prohibition extends to additional insured coverage. *Id.* § 151.104. In essence:

> the Anti-Indemnity Statute prohibits additional-insured coverage when the insurance contract requires the insuring party to provide coverage of a claim caused by the Additional Insured's "negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of the indemnitee," or those of the additional-insured's agent, employee, or third party under its control or supervision.

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 392 F. Supp. 3d at 740; *see also* TEX. INS. CODE §§ 151.101, 151.102, 151.104.

The Underlying Suit sounded in tort. *See* Second Amended Petition, Ex. F hereto, *passim*. In the context of a tort suit, to the extent the agreement requires additional insured coverage "against claims of [the additional insured's] own negligence, those provisions are void." *Union Pac. R.R. Co. v. Brown*, No. 04-17-00788-CV, 2018 WL 6624507, at *5 (Tex. App.—San Antonio Dec. 19, 2018, no pet.). The Statute effectively prevents parties like KRC from shifting responsibility for its own negligence to its subcontractors and their insurers.

**D.      *There is no duty to defend; the underlying petitions did not allege KRC was liable for AWP's negligence.***

As for the duty to defend KRC as an additional insured, consideration is initially limited to the allegations in the underlying petitions. *See Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.*, 135 N.E.3d at 504; *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d at 596. None of these petitions allege that KRC is vicariously (or otherwise) liable *for AWP's conduct. See* Exs. D through F

hereto, *passim*.[8] Because of the Underlying Plaintiffs' failure to allege vicarious liability, there is no duty to defend. *Accord Union Pac. R.R. Co. v. Brown*, 2018 WL 6624507, at *5–6 (holding the Texas Anti-Indemnity Statute voided contractual obligation to defend or indemnify, where "all of the claims against [the putative indemnitee] arise from allegations of [the indemnitee's] own negligence").

Even if a duty to defend initially attached here (which Defendants deny), Ohio law allows the insurer to look beyond the eight corners. *See Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.*, 135 N.E.3d at 504 ("[I]t is proper to look at extrinsic evidence after a duty to defend has attached to determine whether that duty may be terminated when indisputable, reliable evidence establishes that insurance coverage has not been contractually triggered under [the] policy's effective time period.").[9] The Agreement between KRC and AWP makes vicarious liability impossible here.

An employer may be vicariously liable for the negligence of an independent contractor as its agent *only* where the "employer has the right to control the means and methods of the agent or employee's work." *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998) (citing *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 585–86 (Tex. 1964); RESTATEMENT (SECOND) OF

---

[8] All underlying defendants—including AWP—were alleged to be vicariously liable for the acts of their "respective agents, employees, servants, ostensible agents, and/or representatives." *See* Ex. F, ¶ 26. But the underlying plaintiffs only alleged that AWP was KRC's subcontractor, not that it was its agent, employee, servant, or otherwise.

[9] Texas law would permit such an inquiry as well. "This court held in *Northfield* that we will consider extrinsic evidence [in respect to the duty to defend] if two requirements are met: (1) 'when it is initially impossible to discern whether coverage is potentially implicated,' and (2) 'when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.' " *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 846 Fed. Appx. 248, 250–51 (5th Cir. 2021), *certified question accepted* (Mar. 19, 2021) (submitting the question of the *Northfield* exception to the Texas Supreme Court) (discussing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004)). As noted, the underlying petitions do not allege KRC is vicariously liable for AWP's actions, so extrinsic evidence confirming there is no such possibility of vicarious liability would be admissible.

AGENCY § 220, cmt. d); *see also Gonzalez v. Ramirez*, 463 S.W.3d 499, 506 (Tex. 2015).[10] But the AWP Subcontract does no such thing. Instead, it provides that AWP is an "independent contractor." *See* AWP Subcontract [Doc. 1-1] § 13 ("Subcontractor specifically agrees that the only relationship with Contractor, as created under this Subcontract, is that of independent contractor."). The AWP Subcontract lacks any provisions under which KRC may control methods of work or operative detail. *Cf. id.* at Attachment A (requiring AWP to "supply … all labor, materials, tools, equipment, supervision, management, and taxes necessary to complete the specified scope of work"). Moreover, it actually provides that KRC—and not AWP—shall "set and relocate paving signs as needed," the very conduct that is the basis of KRC's complaint. *See id.* at § 2 and Attachment A; Amended Complaint at ¶¶ 15–16.

The contract is determinative of the question of independent contractor, in the absence of an allegation that the contract is a sham or subterfuge. *See Farlow v. Harris Methodist Fort Worth Hosp.,* 284 S.W.3d 903, 911 (Tex. App.–Fort Worth 2009, pet. denied); *see also*, *Bell v. VPSI, Inc.,* 205 S.W.3d 706, 713 (Tex. App.–Fort Worth 2006, no pet.) ("A contract between the parties that establishes an independent contractor relationship is determinative of the parties' relationship in absence of extrinsic evidence indicating that the contract was a 'sham or cloak' designed to conceal the true legal relationship of the parties or that despite the contract terms, the true agreement vested the right of control in the principal."). *Bell* addressed whether vicarious liability applied to a state subdivision and a non-profit as lessors of a van used in a vanpool program for

---

[10] "[A] general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations ... does not mean that the [independent] contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the [independent] contractor is not entirely free to do the work in his own way." *Id.* (quoting *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex.1999)).

commuters. *Id.* at 710. Despite the contract's multiple requirements on the lessee of the van,[11] the court found the lessee remained an independent contractor as a matter of law. *Id.* at 715.

Further, *Bell* found no vicarious liability for the independent contractor's activities as a matter of law. *Id.* at 721. In that analysis, the court noted the lessors "retained right of control must be more than a general right to order the work to start or stop, to inspect progress, or to receive reports." *Id.* at 719; *accord Gonzalez v. Ramirez*, 463 S.W.3d at 506. "Additionally, such liability exists only when the retained control relates to the injury-producing activity itself." *Id.*

There is no allegation of any such sham or subterfuge here and certainly no evidence of it. *See* First Amended Complaint [Doc. 14], *passim*. As in *Bell*, the various requirements for complying with the master Contract and applicable regulations does not change the analysis. *Compare id.* at Attachment A (requiring AWP to "supply … all labor, materials, tools, equipment, **supervision, management**, and taxes necessary to complete the specified scope of work").

Moreover, the scope of work in the AWP Subcontract itself places all responsibility for the setting and relocation of signs *on KRC*, not AWP. AWP Subcontract [Doc 1-1] Attachment A. There is a lack of any relationship between supposed retained control and the injury-producing activity of setting and relocation of signs.

KRC's allegation that AWP assumed responsibility "instead of" KRC under the AWP Subcontract is not on point. The provision quoted by KRC provides:

> This Subcontract represents the entire agreement between Contractor [KRC] and Subcontractor [AWP]. The Contract and Contract Documents are incorporated into this Subcontract by reference, and Subcontractor and its subcontractors will be and are bound by the Contract and Contract Documents insofar as they relate in any

---

[11] In the context of a van lease, the claimant asserted vicarious liability based on "the responsibility to keep the exterior and interior of the van clean; to purchase gas at major name-brand service stations; comply with recommended or required maintenance service at approved service stations; obtain VPSI's advance authorization prior to any other maintenance or repair over a certain dollar amount; not drive outside a 200–mile radius of the driver's home; and `+1`the driver "to drive the van according to a preset schedule and to participate in a basic driver safety training program," arguably limiting his "decision-making … to choosing where to pick up passengers and whether eating or smoking would be allowed." *Id.* at 714.

way, directly or indirectly, to the work covered by this Subcontract. **Subcontractor [AWP] agrees to be bound to Contractor [KRC] in the same manner and to the same extent as Contractor is bound to Owner under the Contract and Contract Documents** ***to the extent of the work provided for in this Subcontract***, and that where, in the Contract or Contract Documents, reference is made to Contractor, and the work specification therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor.

AWP Subcontract at § 2 (emphasis added). AWP's obligation to KRC was thus limited "to the extent of the work provided for in this Subcontract." *Id.* As noted, AWP's obligation was merely to provide signs, not to set or relocate them. KRC retained responsibility for setting and relocating signs, and KRC cannot be vicariously responsible for something it had a direct and independent duty to do, something AWP affirmatively did not have any obligation to do.

KRC's allegation that AWP provided additional signs intended for an unrelated project merely highlights the disconnect between KRC's claim and the basis for such claim. KRC claims AWP placed signs "for a different AWP construction project to the north, one having nothing to do with KRC." [Doc 14] ¶ 16. But KRC cannot be vicariously liable for AWP's activities related to a different contract. Even if negligent supervision were pleaded in the Underlying Petitions (which it wasn't), liability for negligent supervision is distinct from liability for vicarious liability and would still be subject to the Statute's prohibitions. "A claim of negligent hiring and supervision is based on an employer's direct negligence instead of the employer's vicarious liability for the torts of its employees." *Zarzana v. Ashley*, 218 S.W.3d 152, 157-58 (Tex. App.—Houston [14th Dist.] 2007, pet. struck). *See also* Tex. Ins. Code § 151.102 and 151.104 (prohibiting additional insured coverage "to the extent" it would apply to "a claim caused by the negligence or fault [etc.]" of KRC "or any third party under the control or supervision of the [KRC], other than [AWP] or its agent, employee, or subcontractor of any tier."). To the extent AWP could have been

*independently* tortiously liable to the Underlying Plaintiffs (which Defendants deny), KRC had no vicarious liability for AWP's alleged breach of a separate contract to which KRC was not a party.[12]

There was no allegation that KRC's own tort liability was due to AWP's negligence or fault in the Underlying Suit. *See* Exs. D through F hereto, *passim*. Moreover, extrinsic evidence through the AWP Subcontract forecloses the possibility of any such liability. Plaintiff's claim should be dismissed, as no duty to defend was owed as a matter of law.

**E.     There is no duty to indemnify.**

There is no duty to indemnify KRC for the same reasons there is no duty to defend. Even if the Court looks beyond the allegations, the KRC still cannot recover.

### 1.   There is no duty to indemnify based on the lack of allegations of vicarious liability for AWP's acts.

Under Ohio law, "[t]he duty to defend is broader than the duty to indemnify; therefore, in the absence of a duty to defend, there is no duty to indemnify." *Maxum Indem. Co. v. Robbins Co.*, 784 Fed. Appx. at 371–72. Because there is no duty to defend as discussed above, there is no duty to indemnify either. Dismissal is warranted.

Even if this Court applied Texas law, dismissal is still warranted. Generally, the determination of the duty to indemnify prior to resolution of the underlying suit may be premature. *Colony Ins. Co. v. Peachtree Constr., Ltd*, 647 F.3d 248, 254–55 (5th Cir. 2011). But a determination on indemnity may be made if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d at 536 (5th Cir. 2004); *see also, e.g., Ass'n Ins. Co. v.*

---

[12] In this respect, KRC is prohibited from settling out AWP's alleged negligence and then pursuing a claim against AWP for its alleged share of the claim. *See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987) ("We hold that a defendant can settle only his proportionate share of a common liability and cannot preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire claim."). KRC is not seeking such relief here.

*Clarendon Nat'l Ins. Co.*, No. 1:19-CV-1248-LY, 2020 WL 3403073, at *3–4 (W.D. Tex. June 18, 2020) (report and recommendation) (recommending finding of no duty to defend or indemnify, because entities sued were not insureds under policy).

Here, the exact same reasons that KRC is not entitled to a defense as an additional insured defeat KRC's claim for indemnity: KRC was never alleged to be—indeed *could not be*—tortiously liable for the acts or omissions of AWP.

In applying the Statute, the San Antonio Court of Appeals held in a materially identical situation that such lack of allegation was also dispositive of the duty to indemnify:

> Union Pacific next asserts that, because the TAIA voids the indemnity provision only to the extent it requires indemnification for Union Pacific's own negligence, we should remand for a determination of "the extent of Jay Construction's indemnity obligations to Union Pacific, if any, for the negligence or fault of Jay Construction, Rail 1, or NES." But Union Pacific does not identify any pleading in which any party has asserted that Union Pacific is liable for the negligence or fault of any other party. Ramon and Barrera each sued Union Pacific for its own negligence. The TAIA voids Jay Construction's obligation to indemnify Union Pacific for that negligence. No other indemnity issue remains for remand.

*Union Pac. R.R. Co. v. Brown*, 2018 WL 6624507, at *5–6 (holding the Texas Anti-Indemnity Statute voided contractual obligation to defend or indemnify, where "all of the claims against [the putative indemnitee] arise from allegations of [the indemnitee's] own negligence"). This result would be the same whether under a strict eight-corners analysis or otherwise.

### 2. KRC did not settle any claims for vicarious liability for AWP's acts.

As discussed above, the Texas Anti-Indemnity Statute prohibits Plaintiff from additional insured coverage except to the extent Plaintiff is liable for AWP's acts. Here, the underlying petitions did not allege vicarious liability. Even considering extrinsic evidence, such evidence shows that AWP was an independent contractor and KRC could not be liable for AWP's acts as a matter of law.

The Settlement Agreement between KRC and the Underlying Plaintiffs further supports this outcome. The Settlement Agreement provides for a release of claims against KRC and others affiliated with KRC, but not of AWP:

> **5. Release.** In exchange for the consideration, promises, and covenants contained in this Agreement, Plaintiffs Emmett Gonzales, Jr. and Leticia Gonzales, their respective assigns, heirs, executors, insurers, attorneys, agents, and administrators, hereby release and forever discharge **Defendant Knife River Corporation-South as well as its insurers Liberty Mutual Insurance I Helmsman Management Services, AEGIS Insurance Services, Inc., and Energy Insurance Mutual Ltd, along with all of their past, present and future owners, partners, insurers, reinsurers, members, parent companies, subsidiaries, divisions, related entities, affiliates, as well as each of their respective past, present and future principals, directors, members, officers, shareholders, agents, representatives, employees, attorneys, predecessors, successors, heirs, and assigns**, and any and all of them (collectively, the "Released Parties"), from any and all liability, actions, causes of action, claims, complaints, demands, grievances, obligations, losses, damages, injuries and legal responsibilities, of any type whatsoever including Plaintiffs' motions for contempt and Plaintiffs motions for sanctions, whether known or unknown, unforeseen, unanticipated, unsuspected or latent, which Plaintiffs or their respective successors in interest now own or hold, or have at any time owned or held, or may at any time own or hold, by reason of any matter arising from any cause whatsoever prior to the Effective Date that are based upon, relate to or arise out of basis of the Action, whether in law, equity, contract or tort (collectively, the "Claims").

Ex. K (filed with motion to seal, in light of confidentiality provision) at ¶ 5 (bolding added).[13]

The Settlement Agreement releases KRC and its agents, employees, and representatives, but it requires the dismissal of only KRC and not AWP: "Plaintiffs agree to notify the Court of settlement and submit an Agreed Order of Dismissal with Prejudice dismissing the Action against *Defendant*." *Id.* at ¶ 4 (emphasis added); *see also id.* at p.1 (defining "Defendant" as KRC). There was no release of AWP contemplated in this Settlement Agreement. *See id. passim.* AWP was not alleged to be the "respective agents, employees, servants, ostensible agents, and/or

---

[13] In the context of Rule 12(b)(6), "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d at 387. Here, the Amended Complaint references the settlement. *See* Amended Complaint [Doc. 14] ¶¶ 10, 14, 28, 31, 32.

representatives" of KRC, which is why it was not included in the Settlement Agreement. *Compare* Ex. F, ¶ 26. The subsequent nonsuit of AWP was *without* prejudice and consequently gratis. *See* Exs. G through J hereto (filings and orders of dismissal and nonsuit vis-à-vis KRC and AWP, respectively).

There is no settlement as a matter of law for KRC's claimed vicarious liability for AWP. Plaintiff failed to state a claim upon which relief may be granted, and dismissal is warranted.

**F.    *KRC's claims for indemnity coverage for its claims against AWP are not ripe and should be dismissed.***

KRC does not have standing to bring claims against Defendants in respect to whether KRC's separate state-court claims against AWP are covered. Such claims remain pending in the Underlying Suit. *See* First Amended Complaint [Doc. 14] ¶ 11.

No conflict of laws is apparent between Ohio and Texas on this issue. Thus, the Court should apply Texas law. *See Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 687 (5th Cir. 2019) (internal citations omitted) ("A choice-of-law analysis is unnecessary … if the laws of the states with an interest in the dispute do not conflict. … Under such circumstances, the substantive law of the forum applies.") (holding no such conflict existed and applying Texas law).

Under Texas law, "the general rule ... is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *In re Essex Ins. Co.,* 450 S.W.3d 524, 525 (Tex. 2014). The "no direct action" rule pertains to standing, because there is no justiciable controversy until the liability of the insured has been established. *Durham v. Hallmark Cty. Mut. Ins. Co.*, No. 11-16-00183-CV, 2018 WL 3469257, at *3 (Tex. App.—Eastland July 19, 2018, pet. denied) (citing *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)). However, "the need for a determination of liability before bringing a direct action against an insurer, while

often referred to as a standing issue, is more appropriately characterized and analyzed as ripeness." *Id.* (quoting *Auzenne*, *Auzenne v. Great Lakes Reinsurance, PLC*, 497 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). The "no direct action" rule is further supported by the conditions in the Defendants' policies that require there to be a final judgment or settlement signed by Defendants. *See* Ex. B [Doc. 1-2] at 12/58, Section IV.3., and Ex. C [Doc. 1-3] at 30/54, Section VI.A.10.

The precise procedural problem presented here was also presented in *Spih Tyler, LLC v. Liberty Mut. Ins. Co.*, No. 3:17-CV-1292-L, 2018 WL 4003314 (N.D. Tex. Aug. 17, 2018) (J. Lindsay). In *Spih*, the plaintiff sued for both additional insured coverage and for recovery on an underlying claim against a general contractor. *Id.* at *1, 3. The plaintiff had not alleged he had obtained a settlement or judgment against the general contractor so as to have a ripe claim against the liability insurer. *Id.* at *3. Without such settlement or judgment, "an allegedly injured party cannot directly sue the tortfeasor's insurer. Accordingly, Spih's allegation that it was designated as an 'additional insured' is quite beside the point." *Id.*

Ohio law appears consistent with Texas law in this respect. *See Karam v. Allstate Ins. Co.*, 436 N.E.2d 1014, 1019 (Ohio 1982), *overruled on other grounds by Dorsey v. State Farm Mut. Auto. Ins. Co.*, 457 N.E.2d 1169 (Ohio 1984) ("the general rule is that no direct action is permissible by an injured party against a tortfeasor's liability insurance company, the right of action against the company arising under R.C. 3923.20 only after the tortfeasor has obtained a judgment against the insured which is unpaid") (acknowledging limited exception when the alleged tortfeasor is deceased); *see also In re All Cases Against Sager Corp.*, 967 N.E.2d 1203, 1211 (Ohio 2012) ("without a judgment, R.C. 3929.06(B) precludes a direct action against the unexhausted proceeds from any liability-insurance policies and conditions the filing of a supplemental complaint against the insurer upon the entry of a final judgment").

Here, KRC does not allege it has a judgment against AWP. KRC's claim cannot be brought under Ohio law.

Just as in *Spih Tyler*, KRC's allegations of additional insured coverage are beside the point. Without a settlement with or judgment against AWP, KRC cannot bring a direct action against Defendants. KRC has failed to state claim upon which relief may be granted, and such claims should be dismissed.

## IV.    EXHIBITS

"The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The following exhibits are referenced in this motion:

| | |
|---|---|
| Exhibit A: | AWP Subcontract [Doc. 1-1][14] |
| Exhibit B: | Partial copy of Zurich Policy [Doc. 1-2] |
| Exhibit C: | Partial copy of AGLIC Policy [Doc. 1-3] |
| Exhibit D: | Underlying Plaintiffs' Original Petition[15] |
| Exhibit E: | Underlying Plaintiffs' First Amended Petition |
| Exhibit F: | Underlying Plaintiffs' Second Amended Petition |
| Exhibit G: | Underlying Motion to Dismiss KRC |
| Exhibit H: | Underlying Order on Motion to Dismiss KRC |
| Exhibit I: | Underlying Notice of Nonsuit of AWP |
| Exhibit J: | Underlying Order of Nonsuit of AWP |

---

[14] Exhibits A through C were attached to Plaintiff's Original Complaint, and despite not being attached to Plaintiff's Amended Complaint, were referenced therein.

[15] Exhibits D through J are pleadings and other filings from the underlying suit and, as such, are public record. Defendants request the Court take judicial notice. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. Appx. 173, 178 (5th Cir. 2012) (taking judicial notice of pleading filed with Louisiana state court).

Exhibit K:    Underlying Settlement Agreement, filed under seal

Exhibit L:    Certified Copy of Zurich Policy

## V. CONCLUSION

Plaintiff has failed to state a viable claim upon which relief may be granted against Zurich or AGLIC. The Plaintiff's claims should be dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

WHEREFORE, Defendants Zurich American Insurance Company and American Guarantee and Liability Insurance Company respectfully request that their Motion to Dismiss be granted, and for such other and further relief, both in law and in equity, to which they may be justly entitled.

Respectfully submitted,

_____*/s/ Blair Dancy*_____

Blair Dancy
State Bar No. 24001235
bdancy@cstrial.com
Michael D. Moody
State Bar No. 24041510
mmoody@cstrial.com
Sarah E. Scott
State Bar No. 24073580
sscott@cstrial.com
**CAIN & SKARNULIS PLLC**
400 W. 15th Street, Suite 900
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile
**ATTORNEYS FOR DEFENDANTS**