UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KNIFE RIVER CORPORATION – SOUTH, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-1344-B |
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Zurich American Insurance Company and American Guarantee and Liability Insurance Company (hereinafter "Zurich," "AGLIC," and collectively "the Insurers")'s Motion to Dismiss for Failure to State a Claim (Doc. 17). For the following reasons, the Court **DENIES** the Insurers' motion.

## I.

## BACKGROUND[1]

### A.    *The Underlying Suit*

This is a declaratory judgment action about whether an insurer must indemnify a third party who settled claims arising out of a single-car accident. Plaintiff Knife River Corporation–South ("KRC") "contract[ed] with the Texas Department of Transportation ('TxDOT') to complete road

---

[1] The Court derives this factual statement from Plaintiff's Amended Complaint (Doc. 14) or from the pleadings cited.

work" on a stretch of highway. Doc. 14, Am. Compl., ¶ 8. "KRC subcontracted with AWP[, Inc. ('AWP')] to provide and place required signage" and "with Tex Op Construction, LP ('Tex Op') for milling operations in which the existing road surface is removed." Doc. 17, Defs.' Mot., 3. AWP and Tex Op's Subcontract Agreements with KRC required each to defend and indemnify KRC for certain claims. Doc. 14, Am. Compl., ¶ 10.

On March 19, 2019, a driver in the construction area lost control of his car, crashed, and was seriously injured. *Id.* ¶ 7; Doc. 17, Defs.' Mot., 3. The driver and his wife sued in Texas state court (the "Underlying Lawsuit") claiming that KRC, AWP, and Tex Op (collectively, the "Underlying Defendants") "were negligent with respect to [the] road work . . . [leading] to the accident causing [the driver's] personal injuries." Doc. 14, Am. Compl., ¶¶ 6–7. Specifically, the couple's petition in the state case (the "Underlying Petition") alleged that:

> the [Underlying] Defendants failed to properly backfill, slope, or otherwise make safe an excessive height difference at the edge of a roadway travel lane that occurred during the course of the road work, and failed to properly, compliantly, and/or sufficiently warn the traveling public of the unreasonable dangers posed by the uneven lane edge and other roadway hazards requiring signage.

*Id.* ¶ 8.

Eventually, KRC "settled the Underlying Lawsuit . . . and [the couple] dismissed their claims against all [Underlying Defendants]." *Id.* ¶ 10. "KRC contends that its settlement . . . was made necessary because of, and arose out of, in whole or in part, the negligence of . . . AWP and Tex Op, both of which . . . [had] agreed to defend and indemnify KRC against claims just like those asserted in the Underlying Lawsuit." *Id.* "Tex Op and its insurers" subsequently "reached an agreement with KRC concerning their defense and indemnification obligations," but "AWP and its insurers Zurich and AGLIC have not." *Id.* ¶ 11.

B.      *The Instant Suit*

KRC filed suit in this court seeking a declaratory judgment "that Zurich . . . owes defense and indemnity to KRC on Zurich's policy issued to AWP. . . either because KRC is an additional insured or because Zurich is required to honor AWP's contractual indemnity obligations to KRC, and that the applicable excess policy issued by . . . AGLIC . . . also provides coverage to KRC in connection with the claims at issue." *Id*. at 1. "KRC also asserts a breach[-]of[-]contract claim against [the Insurers]." *Id*. The Insurers now move to dismiss the claims. Doc. 17, Defs.' Mot. They argue that "KRC's additional-insured claim is prohibited under Texas's anti-indemnity statute" because KRC "seeks reimbursement from its subcontractor's insurers for a settlement of KRC's own negligence—not the negligence of [AWP]." *Id*. at 1. They also argue that the breach-of-contract and duty-to-indemnify claims are not ripe. *See id*. at 17–21. The motion has been fully briefed and the Court considers it below.[2]

## II.

## LEGAL STANDARDS

A.      *Rule 12(c)*

A party may move for judgment on the pleadings after the pleadings are closed and when doing so would not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered

---

[2] KRC argues that the Insurers' motion is untimely because it was filed as a motion to dismiss under Rule 12(b)(6) after the Insurers had answered. Doc. 21, Pl.'s Resp., 4; *see* Fed. R. Civ. P. 12(b). The Insurers answered KRC's Original Complaint on July 6, 2021. Doc. 7, Answer. As KRC acknowledges, the Court may consider a post-answer 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c), applying the same standard to both types of motions. Doc. 21, Pl.'s Resp., 4 (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)); *see* Doc. 22, Defs.' Reply, 3 (acknowledging that the standard "is the same"). Consistent with its Order (Doc. 8), the Court considers this motion under Rule 12(c).

by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quotations omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). However, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court's review under Rule 12(b)(6) is limited to a plaintiff's allegations in the complaint and to those documents attached to the complaint or to the defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims.[3]

---

[3] Here, this means the Court—which does not find it appropriate to convert this motion to one for summary judgment—could consider KRC's Complaint, the Zurich and AGLIC Policies, the Underlying Petition, the AWP Subcontract, and the Settlement Agreement, as each of these documents is (1) attached to either the complaint or the motion to dismiss and (2) referred to in the complaint and central to KRC's claims. However, as explained below, state law does not permit the Court to consider the AWP Subcontract

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If other evidence is considered, "the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)." *Id.*

B.     *The Texas Anti-Indemnity Statute*

The Texas Anti-Indemnity Statute, found at Subchapter C of Chapter 151 of the Texas Insurance Code, "applies to a construction contract for a construction project for which an indemnitor is provided or procures insurance subject" to Chapter 151. Tex. Ins. Code Ann. § 151.101(a).

Section 151.102 voids indemnity provisions in a qualifying construction contract or collateral agreement if the provision:

> [R]equires an indemnitor to indemnify, hold harmless, or defend a party, including a third party, against a claim caused by the negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of the indemnitee, its agent or employee, or any third party under the control or supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier.

*Id.* § 151.102. "This section allows a party to indemnify another in limited circumstances, but it disallows indemnification for claims caused by the party seeking indemnification." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 392 F. Supp. 3d 731, 739 (S.D. Tex. 2019).

Section 151.104(a) similarly voids additional-insured provisions "to the extent that [such a provision] requires or provides coverage the scope of which is prohibited under this subchapter for

---

in determining the issue of the Insurers' duty to defend. *See infra* Section III(B)(1). So, the Court considers only the Complaint, Zurich Policy, AGLIC Policy, Underlying Petition, and Settlement Agreement.

an agreement to indemnify." Tex. Ins. Code Ann. § 151.104(a).[4] So, Texas law:

> [P]rohibits additional-insured coverage when the insurance contract requires the insuring party to provide coverage of a claim caused by the Additional Insured's 'negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of the indemnitee,' or those of the additional-insured's agent, employee, or third party under its control or supervision [other than the indemnitor or its agent, employee, or subcontractor of any tier].

*Maxim Crane Works*, 392 F. Supp. 3d at 740 (quoting Tex. Ins. Code. Ann. § 151.102).

C.       *Duty to Defend and Indemnify*

Under Texas law, "courts are to construe insurance policies 'using ordinary rules of contract interpretation.'" *Landmark Am. Ins. Co. v. Lonergan L. Firm, P.L.L.C.*, 809 F. App'x 239, 241 (5th Cir. 2020) (quoting *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017)).

"In Texas, an insurer's duty to defend is distinct from, and broader than, its duty to indemnify." *Armstrong Moving & Storage, Inc. v. Am. Cas. Co.*, 2012 WL 12850261, at *3 (W.D. Tex. Dec. 18, 2012) (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527–28 (5th Cir. 2004)). Determination of the duty to defend begins under the eight-corners rule, which compares the allegations in the plaintiff's petition, taken as true, with the insurance policy's provisions. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 2022 WL 413940, at *3, *6 (Tex. Feb. 11, 2022); *Armstrong Moving & Storage*, 2012 WL 12850261, at *3 (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved

---

[4] Sections 151.103 and 151.105 establish various exclusions from the rules set out in §§ 151.102 and 151.104, but these are not relevant to this dispute.

in [the] insured's favor." *Id.* (first alteration in original) (quoting *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). The insured bears the burden of showing that the underlying claim "is 'potentially within the scope of coverage under the polic[y].'" *Id.* (alteration in original) (quoting *Fed. Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)). But, "if the insurer relies on an exclusion of coverage within the policy, it is the insurer who bears the burden of proving the applicability of the exclusion." *Id.*

The eight-corners rule does not apply to the duty to indemnify, which "depends on the facts proven [in the underlying suit] and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *Id.* (alteration in original) (quoting *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009)). Generally, a duty to indemnify should not be decided until liability is determined in the underlying suit. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254–55 (5th Cir. 2011). However, "an insurer's duty to indemnify 'is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Armstrong Moving & Storage*, 2012 WL 12850261, at *3 (emphasis omitted) (quoting *Farmers Tex. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).

## III.

## ANALYSIS

Below, the Court begins by setting out the relevant insurance policy provisions and the allegations made in the Underlying Petition, as a duty-to-defend eight-corners analysis relies on these. Next, the Court considers whether KRC's claims should be dismissed. First, the Court

examines the duty-to-defend claim. As a threshold matter, the Court finds that neither Texas law nor Ohio law permits the Court to consider the AWP Subcontract as extrinsic evidence of Zurich's duty to defend KRC, so there is no actual conflict of law and the law of the forum state—Texas—applies. Then, the Court engages in an eight-corners analysis and finds, on this procedural posture, (1) no violation of the Texas Anti-Indemnity Statute and (2) no other basis for determining that Zurich has no duty to defend. So, the Court will not dismiss KRC's duty-to-defend claims. Next are the duty-to-indemnify and breach-of-contract claims. Because KRC has been sued in the Underlying Lawsuit (triggering the issue of the Insurers' duty to defend and to indemnify) and because liability and breach of contract can be determined (if need be) by a jury in this action, the Court declines to dismiss these claims as unripe. For these reasons, the Court **DENIES** the Insurers' motion.

A.    *The Policies and Underlying Petition Allegations*

1.    The Zurich Policy

"Zurich issued [a] $2M per occurrence Commercial General Liability Policy . . . to AWP for the period June 15, 2018, to June 15, 2019 (the 'Zurich Policy')." Doc. 14., Am. Compl., ¶ 18. The Zurich Policy covers damages arising out of covered claims for bodily injury and provides that Zurich has a duty to defend suits presenting such claims:

1. Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. . . .

This insurance applies to "bodily injury" . . . only if:
The "bodily injury" . . . is caused by an "occurrence" . . . ;

> The "bodily injury" . . . occurs during the policy period . . . .

Doc. 1-2, Zurich Policy, 2. But, the Zurich Policy contains certain exclusions, as well as exclusions to the exclusions:

> 2. Exclusions
>
> This insurance does not apply to: . . .
>
> "Bodily injury" . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" . . . occurs subsequent to the execution of the contract or agreement.

*Id.* at 3. The Zurich Policy includes the following definition:

> "Insured contract" means: . . .
> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement . . . .

*Id.* at 14. Finally, the Zurich Policy includes an "automatic" additional-insured provision:

> Additional Insured – Automatic – Owners, Lessees Or Contractors
>
> A. Section II – Who Is An Insured is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf, in the performance of your ongoing operations or "your work" as included in the "products completed operations hazard", which is the subject of the written contract or written agreement.
>
> However, the insurance afforded to such additional insured:
>
> 1. Only applies to the extent permitted by law; and
> 2. Will not be broader than that which you are required by the written contract or

written agreement to provide for such additional insured.

. . . .

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that: . . .You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured . . . .

*Id.* at 28–29.

2.      The AGLIC Policy

"Zurich affiliate AGLIC issued [a] $25M per occurrence Commercial Umbrella Liability Policy . . . to AWP, with a policy period of June 15, 2018, to June 15, 2019" (the "AGLIC Policy"). Doc. 14, Am. Compl., ¶ 22. The AGLIC Policy covers certain damages in excess of the Zurich policy and provides in relevant part that:

A. Coverage A - Excess Follow Form Liability Insurance

Under Coverage A, we will pay on behalf of the insured those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, this policy includes:

1. The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2. below; and
2. The terms and conditions that apply to Coverage A of this policy. Notwithstanding anything to the contrary contained above, if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then Coverage A does not apply to such damages.

Doc. 1-3, AGLIC Policy, 14. Because coverage under the AGLIC policy depends on coverage under the Zurich Policy ("follows form"), the Court does not analyze it separately below.

3.      The Underlying Petition Allegations

The Underlying Petition alleges in relevant part that:

•       Defendants failed to properly backfill, slope, or otherwise make the edge safe, and failed to place proper warning signs—in direct violation of [TxDOT's]

- 10 -

contractual plans and requirements for the project. Doc. 17-3, Gonzales 2d
Am. Pet., ¶ 17.

- [KRC] had a contract with [TxDOT] for the project . . . and AWP, Inc.
[was] working as [a] subcontractor[] under the direction and control of
[KRC]. *Id.* ¶ 18.

- Defendants breached the duty of care, including but not limited to, [by] . . .
[f]ailing to place proper signage. *Id.* ¶¶ 26, 40.

- Defendants' negligence was the direct and proximate cause of serious injuries
to Plaintiffs. *Id.* ¶ 21.

- Defendants are jointly and severally responsible for the acts and/or omissions
of its respective agents, employees, servants, ostensible agents, and/or
representatives through the theories of employment, agency, respondeat
superior, ostensible agency, apparent agency, actual agency, and/or other
agency and/or vicarious responsibility principles. *Id.* ¶ 26.

- Defendants undertook . . . to render services to another which they should
have recognized as necessary for the protection of a third person . . . including
. . . entering into a contract with [TxDOT] that required Defendants to . . .
place proper warning signs . . . .[and] fail[ed] to exercise reasonable care to
perform the undertaking . . . . *Id.* ¶¶ 29–30.

- The harm to [the Underlying Plaintiffs] was suffered because of reliance upon
the undertaking, including . . . Defendants' failure to place proper warning
signs. *Id.* ¶ 32.

- Defendants' . . . failure to place proper signage after the roadway was stripped
created a condition that posed an unreasonable risk of harm to persons using
the roadway. *Id.* ¶ 37.

- Defendants . . . show[ed] a reckless indifference . . . or . . . reckless disregard
to the consequences to [the Underlying Plaintiffs] . . . [by] . . . failing to place
proper signage. *Id.* ¶ 43.

B.   *Whether KRC's Claims Should Be Dismissed*

KRC's operative complaint alleges that settlement of the Underlying Lawsuit "was made

necessary because of, and arose out of, in whole or in part, the negligence of" AWP, who had agreed

to indemnify and defend KRC and name KRC as an additional insured.[5] Doc. 14, Am. Compl., ¶ 10.

KRC alleges that "discovery conducted in the Underlying Lawsuit and expert analysis reveals that

the temporary traffic control/construction zone warning signage in place and presented to [the

---

[5] The Settlement Agreement does not contradict this, as KRC made "no admission" of any
wrongdoing. Doc. 18-1, Settlement Agreement, 2.

driver] leading up to and at the time and place of the accident at issue, which signage . . . AWP was required to properly place . . . was a contributing cause of the accident." *Id.* ¶ 15. KRC claims that AWP contractually assumed responsibility for all project duties related to signage by signing the subcontract stating that such duties would apply to the subcontractor "instead" of KRC. *Id.* So, it claims any negligence based on the signage was AWP's, not KRC's. *Id.* KRC further claims that misleading signage placed by AWP in KRC's construction zone was not part of AWP's duties for KRC, but that "AWP dangerously placed the confusing signs [from another project just north of KRC's project] in KRC's construction zone without KRC's permission" and despite KRC's demands that the signs be removed. *Id.* ¶ 16.

Presented with these allegations, the Insurers claim that they cannot, as a matter of law, owe a duty to defend and indemnify KRC as an additional insured for KRC's settlement in the underlying suit. Doc. 17, Defs.' Mot., 11. They argue KRC could, and did, only settle for KRC's own negligence and the Texas Anti-Indemnity Statute bars indemnification or additional-insured coverage in this situation. Doc. 17, Defs.' Mot., 11; Doc. 22, Defs.' Reply, 3–9. Specifically, they assert that the underlying petition does not allege any negligence by AWP for which KRC could be held liable, because (1) the underlying petition did not allege that KRC was vicariously liable for AWP's actions; (2) AWP was a subcontractor acting independent of KRC's control; and (3) AWP's subcontract with KRC provided that KRC, not AWP, "shall 'set and relocate paving signs as needed,'" such that any signage-related allegations in the petition refer to KRC's duties, not AWP's. Doc. 17, Defs.' Mot., 11–13. The Insurers therefore move the Court to dismiss KRC's claims as (1) barred by the Texas Anti-Indemnity Statute, (2) clearly outside the scope of coverage, and (3) premature.

1.    Choice of Law

As a threshold matter, the Insurers claim that Ohio law governs the policies, while KRC claims that the Court should apply Texas law. Doc. 17, Defs.' Mot., 9; Doc. 21, Pl.'s Resp., 24 n.4. This is relevant if it impacts whether the Court can consider the AWP Subcontract in determining a duty to defend and to indemnify.

A court sitting in diversity jurisdiction applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). But, "'[i]f the [relevant] laws of the states do not conflict, then no choice-of-law analysis is necessary,' and [the Court] simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir.2002)).

Here, the parties agree that Texas and Ohio law both require the court to begin with an eight-corners analysis to determine whether an insurer has a duty to defend. Doc. 17, Defs.' Mot., 8–9; Doc. 21, Pl.'s Resp., 24 n.4.; *see also Ohio Gov't Risk Mgmt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19; *Monroe Guar. Ins. Co.*, 2022 WL 413940, at *6. Zurich asserts that Ohio law conflicts with Texas law by allowing consideration of extrinsic evidence to excuse this duty in some circumstances. Doc. 17, Defs.' Mot., 9.  However, Zurich admits that Texas law also permits consideration of extrinsic evidence for this purpose. *Id.* at 12 n.9. While Zurich has not identified any actual conflict in Texas and Ohio law regarding extrinsic evidence as relevant to the Court's analysis of the Texas Anti-Indemnification Statute or Zurich's duty to defend, the Court considers whether a conflict of law exists.

- 13 -

The Texas Supreme Court recently held that courts may consider extrinsic evidence in determining a duty to defend so long as:

> the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, . . . provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Monroe Guar. Ins. Co.*, 2022 WL 413940, at *6. Here, interpretation of the AWP Subcontract's language allocating responsibility for sign placement and location would arguably "overlap with the merits of liability," so its consideration is not permitted under Texas law. *See id.*

Under Ohio law, a court may consider reliable extrinsic evidence in determining a duty to defend when it "indisputabl[y] . . . establishes that insurance coverage has not been contractually triggered." *Fireman's Fund Ins. Co. v. Hyster-Yale Grp., Inc.*, 2019-Ohio-1522, 135 N.E.3d 499, ¶ 10 (8th Dist.). But this exception to the general rule that an "insurer must defend the insured . . . when the allegations state a claim that potentially or arguably falls within the liability insurance coverage" applies only if the extrinsic evidence establishes that "all the claims [within an underlying petition] are clearly and indisputably outside the contracted coverage." *Harrison* at ¶ 19 (first quoting *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984); then quoting *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113, 507 N.E.2d 1118 (1987)[6]). Courts applying Ohio law have considered extrinsic evidence *clearly* establishing that the alleged injury occurred outside the policy coverage dates, *Fireman's Fund Ins. Co.* at ¶ 19, or that the facts as alleged in the

---

[6] *Gill* has since been limited to its facts, which involved whether a court could consider an insured's murder conviction to find that the insurer had no duty to defend in the victim's subsequent wrongful death suit, where the policy excluded coverage for "intentional acts." *Cincinnati Ins. Co. v. Colelli & Assocs.*, 95 Ohio St.3d 325, 2002-Ohio-2214, 767 N.E.2d 717, ¶ 1; *Gill*, 507 N.E.2d at 1124–25.

- 14 -

petition *could not possibly* "support a cause of action within the scope of the policy's coverage." *Burlington Ins. Co. v. Eden Cryogenics LLC*, 126 F. Supp. 3d 947, 958 (S.D. Ohio 2015) (quoting *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 2005-Ohio-430, ¶ 25, 159 Ohio App. 3d 590, 597, 824 N.E.2d 1027, 1033); *see also Gill*, 507 N.E.2d 1118, at 1123.

Here, the AWP Subcontract's language does not establish that all the underlying allegations are "indisputably" outside the policies' coverage. *See Harrison* at ¶ 19. To the contrary, the parties vigorously dispute the AWP Subcontract's requirements, interpretation, and effect on AWP's and KRC's respective liability in the Underlying Lawsuit, jointly and separately. *See, e.g.*, Doc. 17, Defs.' Mot., 15; Doc. 21, Pl.'s Resp., 18; Doc. 22, Defs.' Reply, 8–9. Further, the Complaint states AWP placed signs for another project in KRC's zone, contributing to the driver's confusion—arguably an act outside the parties' contracted relationship but for which KRC could potentially be held liable under one of the theories alleged in the Underlying Petition, as discussed below. Doc. 14, Am. Compl., ¶¶ 15–16. Where—as here—the absence of coverage is not indisputable, Ohio law does not consider extrinsic evidence to excuse the duty to defend. *See NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 545 (S.D. Ohio 2019).

In sum, neither state's law permits consideration of this extrinsic evidence. Under Texas law the Court may not consider the AWP Subcontract in evaluating whether Zurich owes a duty to defend because the provisions overlap with liability determinations. *Monroe Guar. Ins. Co.*, 2022 WL 413940, at *6. And under Ohio law, the Court may not interpret language in the AWP Subcontract to excuse a duty to defend if one is triggered by an eight-corners analysis, since the contract language's meaning and effect is disputed. *See NCMIC Ins. Co.*, 389 F. Supp. 3d at 545. Either way, the Insurers' duty to defend will be determined by an eight-corners analysis. For this reason, the

Court finds no actual conflict of law and applies the law of the forum state, Texas. *See Mumblow*, 401 F.3d at 620; *Fireman's Fund Ins. Co.* at ¶ 33 ("As we have concluded that the competing states would use the same rule of law permitting the use of extrinsic evidence to determine that as a matter of law, there is no duty to defend . . . there is no need to make a choice-of-law determination because there is no conflict of law.").[7]

> 2.  Eight-Corners Analysis

Taking as true KRC's pleadings and conducting an eight-corners analysis as required by Texas (and Ohio) law, the Court finds that the Texas Anti-Indemnity Statute does not bar KRC's claims. Therefore, the Court **DENIES** the Insurers' motion to dismiss.

> a.  *The Texas Anti-Indemnity Statute*

KRC pleads that its settlement in the underlying suit "arose out of, in whole or in part . . . the negligence of . . . [AWP]" and that it seeks to recover damages attributable to AWP's negligence. Doc. 14, Am. Compl., ¶¶ 10, 12–14. The underlying petition alleges that:

> Defendants are jointly and severally responsible for the acts and/or omissions of [their] respective agents, employees, servants, ostensible agents, and/or representatives through the theories of employment, agency, respondeat superior, ostensible agency, apparent agency, actual agency, and/or other agency and/or vicarious responsibility principles.

Doc. 17-3, Gonzales 2d Am. Pet., ¶ 26. The Zurich Policy states that it will indemnify an additional insured "to the extent permitted by law," and that coverage or indemnification is available only to

---

[7] Zurich asserts that "Article 21.42 of the Texas Insurance Code[,] [which] compels the application of Texas law to the construction of policies, under certain circumstances, when the insured is a citizen or inhabitant of Texas" does not apply in this case, because the policies at issue here were issued in Ohio and not "in the course of the company's Texas business." Doc. 17, Defs.' Mot., 7 n.6 (quoting *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 292 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)). The Court agrees. The Texas statute does not compel application of Texas law to these policies, which were executed in Ohio. Doc. 1-2, 1-3; *see Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1359 (5th Cir. 1973). However, the Court applies Texas law for the reason given above.

the extent the claimed bodily injury results from AWP's—not KRC's—negligence. *See* Doc. 1-2, Zurich Policy, 28. The AGLIC Policy follows form as to the Zurich Policy. *See* Doc. 1-3, AGLIC Policy, 14.

Considering these provisions and pleadings together, the Court finds no violation of the Texas Anti-Indemnity Statute. The policy provisions comply with the Statute's requirement that an indemnification or additional-insured provision is only valid to the extent it requires an insurer (Zurich) to indemnify a third party (KRC) for an insured (AWP)'s own negligence. KRC pleads that its settlement for a bodily injury (a covered harm) occurring on March 19, 2019 (a covered date), "ar[ose] from . . . the negligence of . . . AWP" (Zurich's insured) and states a factual basis for its contentions (AWP's placement of signage within the construction zone). Doc. 14, Am. Compl., ¶ 7.

The parties dispute how the Zurich Policy's language, which provides indemnity only for liability "caused by" AWP's negligence, differs from cases construing broader indemnification clause language. Doc. 21, Pl.'s Resp., 19–22 (discussing "flow-through" liability and cases); Doc. 22, Defs.' Reply, 3–4. However, taking KRC's pleadings as true, KRC has plausibly alleged that AWP's acts or omissions in placing signs in KRC's construction zone potentially caused—in whole or in part—the underlying accident and that KRC was potentially liable for such acts. *See* Doc. 14, Am. Compl., ¶¶ 8–10. Therefore, the Court declines to dismiss KRC's claims on this basis.

   b. *Duty to defend*

Next, the Insurers assert that the Underlying Petition did not allege that KRC was vicariously liable for the acts of its subcontractor, AWP, but only that each defendant in the underlying suit was vicariously liable for the actions of its own agents. Doc. 17, Defs.' Mot., 12–13. They argue that the AWP Subcontract shows that: (1) AWP was an independent contractor for whose actions KRC

could not have been vicariously liable, and (2) "AWP's obligation was merely to provide signs" while "KRC retained responsibility for setting and relocating signs." *Id.* at 15. For these reasons, the Insurers assert that Zurich has no duty to defend KRC in the underlying suit and that KRC's claims that it does should be dismissed. *Id.* at 11.

As explained above, the Court cannot now consider the provisions of the AWP Subcontract but must confine its duty-to-defend analysis to the eight corners of the Underlying Petition and the Zurich Policy. The Underlying Petition claimed that:

> Defendants are jointly and severally responsible for the acts and/or omissions of its respective agents, employees, servants, ostensible agents, and/or representatives through the theories of employment, agency, respondeat superior, ostensible agency, apparent agency, actual agency, and/or other agency and/or vicarious responsibility principles.

Doc. 17-3, Gonzales 2d Am. Pet., ¶ 26. So while the Insurers rely on cases in which plaintiffs alleged liability based on respondeat superior, the allegations here are broader and might trigger Zurich's duty to defend.[8]

For example, the Underlying Petition alleges that "Defendants"—a designation which includes both KRC and AWP—are jointly and severally liable for the actions of others under Texas's doctrine of "ostensible agency." *Id.* Under this theory, a principal may be estopped from denying liability for a subcontractor's actions if a representation by the principal has caused justifiable reliance on the actions of a subcontractor—even an independent contractor who controls the manner and means of his own activities, as the Insurers claim AWP did. *See Baptist Mem'l Hosp. Sys. v. Sampson*,

---

[8] Because the Underlying Petition provides this alternative theory of liability, the Court need not decide whether the Insurers' construction of the Texas Anti-Indemnification Statue as applied to vicarious liability limitations on independent contractors would render KRC's additional-insured insurance coverage "illusory." *See* Doc. 27, Pl.'s Sur-Reply, 3–4; Doc. 29, Defs.' Sur-Sur-Reply, 2–4.

969 S.W.2d 945, 947–48 (Tex. 1998). The Underlying Petition claims that "Defendants" were responsible for the allegedly hazardous sign placement in KRC's construction zone. Doc. 17-3, Gonzales 2d Am. Pet., ¶¶ 14, 26, 32, 40, 43. So, the Underlying Petition arguably alleges that KRC was liable for AWP's negligent acts, within KRC's construction zone, under a theory of ostensible agency. Further, KRC has pleaded that it is the sign-related allegations in the underlying petition that potentially trigger Zurich's duty to defend. *C.f. Union Pac. R.R. Co. v. Brown*, 2018 WL 6624507, at *5 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (upholding a district court's decision to grant summary judgment based on the Anti-Indemnity Statute where the appellant-defendant "[did] not identify any pleading in which any party has asserted that [it was] liable for the negligence or fault of any other party").

All in all, taking KRC's pleadings as true, comparing the language of the Zurich and AGLIC Policies with the Underlying Petition's allegations, and giving the benefit of any doubt regarding coverage to the alleged insured, the Court cannot now conclude that Zurich has no duty to defend KRC in the Underlying Lawsuit. *See Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 ("[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor.") (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)); *see also Willoughby Hills*, 9 Ohio St.3d at 180, 459 N.E.2d 555 ("[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim.").

Therefore, the Court declines to dismiss KRC's claims on this basis.

3.    Ripeness and Duty to Indemnify

Finally, the Insurers argue that Texas's direct-action rule bars as unripe KRC's claims for declarations regarding contractual indemnity and a duty to indemnify. Doc. 17, Defs.' Mot., 19. The Insurers claim that under Texas law "an injured party [generally] cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *Id.* (quoting *In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014)). Under this "direct-action rule" and the Policies, unless and until there is a final judgment against AWP or a settlement signed by the Insurers, the Insurers claim KRC's duty-to-indemnify claims are not ripe and should be dismissed. *Id.* KRC responds that a settlement implicating AWP has been effected and that the issue—if not the extent—of Zurich's duty to indemnify KRC is ripe to be determined in this Court. Doc. 21, Pl.'s Resp., 26.

Zurich relies on *Spih Tyler, LLC v. Liberty Mutual Insurance Co.*, 2018 WL 4003314 (N.D. Tex. Aug. 17, 2018). Doc. 17. Defs.' Mot., 20. In *Spih*, a hotel franchisee alleged property damage to a property constructed by general contractor. 2018 WL 4003314, at *1. After settling with the general contractor for design and construction defects that it alleged caused the damage, the franchisee sued the contractor's insurers in state court, claiming breach of contract and violations of the Texas Insurance Code. *Id.* The insurers removed the action to federal court and then moved to dismiss Spih's claims under Rule 12(c). *Id.* The insurers argued that: "(1) Spih [could not] make its own claims for failure to defend or to indemnify since it ha[d] not been sued; and (2) an insured cannot recover damages based on an insurer's statutory conduct in the absence of the insured contractual right to receive policy benefits and failing to sustain any other injury." *Id.* The franchisee

never filed a response to the motion to dismiss. *Id.*

The district court agreed with the insurers that "Spih ha[d] not alleged that any exception [to Texas's direct action rule] exist[ed] or that it secured an agreement or a judgment against [the insured], which would enable it to pursue claims against [the insurers]." *Id.* at *3. The district court further noted that Spih's complaint did not plausibly state a claim for violations of the Texas Insurance Code, and that Spih had failed to respond to the motion to dismiss or request an opportunity to amend its pleadings. *Id.* at *4. For these reasons, the court dismissed Spih's claims with prejudice. *Id.* at *5.

The Court finds that *Spih* does not require it to dismiss Zurich's duty-to-indemnify claims. KRC—unlike Spih—has been sued in an underlying action, triggering the question of Zurich's duty to defend KRC. *See id.* at *1; Doc. 17-3, Gonzales 2d. Am. Pet. And while determination of the duty to indemnify is generally premature before issues of liability are resolved in the underlying suit, KRC correctly argues that the factual question of Zurich's liability and any resulting duty to indemnify can be decided by jury trial in this Court if not resolved in state court. Doc. 21, Pl.'s Resp., 26; *see Peachtree Constr., Ltd.*, 647 F.3d at 254–55 (noting that determinations of duty to indemnify require a prior determination of liability); *ASI Lloyds v. Newman*, 2012 WL 13042502, at *5 (S.D. Tex. Nov. 27, 2012) ("Because there has been no final judgment against [the insured] in the [underlying] lawsuit, [the insurer's] duty to indemnify has not yet arisen; accordingly it cannot have breached this duty."); *Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 2009 WL 10669796, at *1 (W.D. Tex. Dec. 16, 2009), *aff'd*, 639 F.3d 701 (5th Cir. 2011) (affirming a district court's grants of declaratory judgments premised upon jury findings). A federal district court may hold a jury trial to determine contested issues of fact necessary to resolve the issue of whether an insurer owes a duty to indemnify in an

underlying action.[9] *See Md. Cas. Co.*, 2009 WL 10669796, at *1, *aff'd*, 639 F.3d 701; *c.f. Interstate Fire & Cas. Co. v. Cath. Diocese*, 2014 WL 12479411, at *1 (W.D. Tex. Dec. 1, 2014) (noting that the court held a bench trial to resolve disputed issues of fact before determining a duty to indemnify in a declaratory judgment action).

KRC has repeatedly argued—and the Court expects—that liability will be resolved in the underlying state court action. *E.g.*, Doc. 26, Pl.'s Sur-Reply, 2 ("The underlying tort lawsuit in which this [liability] determination can and should be made is currently set for trial November 1, 2021[.]") Yet KRC has also requested a jury trial in this Court on the issues for which that right is available. Doc. 14, Am. Compl., 14–15 (asserting claims for breach of contract and demanding a jury trial); Doc. 21, Pl.'s Resp., 26 ("The extent of AWP's negligence can and will be determined *either* at the trial of KRC's third-party claim for indemnification in the underlying lawsuit (currently set for trial in October), *or*, if necessary, in a jury trial of KRC's claims herein against the Zurich Defendants for declaratory judgment and breach of contract.") (emphasis in original). So, while other courts have found that cases are premature when liability is to be determined in a state court proceeding rather than in the instant action, it is not clear in the present case that liability will be settled in the Underlying Lawsuit and not in the instant suit. *Compare Burlington Ins. Co. v. Farley Grp., Inc.*, 2018 WL 8755423, at *2–3 (S.D. Tex. Sept. 5, 2018) (dismissing without prejudice for lack of subject-matter jurisdiction a plaintiff's duty to indemnify declaratory judgment claims, because there

---

[9] The parties' briefing cites numerous cases relative to theories of "flow-through liability" and who bears the burden of proving that kind of liability in deciding a duty to indemnify. *See* Doc. 21, Pl.'s Resp., 19–22 (discussing *Barnes v. Lone Star Steel Co.*, 642 F.2d 993 (5th Cir. 1981) and *Delta Engineering Corp. v. Warren Petroleum*, 668 S.W.2d 770 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). Because the Court finds that it would be premature to consider questions of Zurich's duty to indemnify, it does not now consider these cases.

had been no resolution of the matter in the underlying state court action), *with* Doc. 21, Pl.'s Resp.,

26. Therefore, the Court declines to dismiss KRC's duty-to-indemnify and breach-of-contract claims

as unripe.

## IV.

## CONCLUSION

For the reasons given above, the Court **DENIES** Defendants' Motion to Dismiss.


**SO ORDERED**.

**SIGNED: March 8, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE